Good morning, Your Honors. May it please the Court, Ashwini Mate representing Keith Leon Smith, and I'd like to try to reserve two minutes of my time for rebuttal, if I may. Your Honors, either the government had to prove that Mr. Smith had the intent to harm Deputy Beeler, or they did not. If they didn't have to prove it, and indeed they didn't prove it, then the aggravated assault guidelines should not have been applied to his offense at sentencing. If they did have to prove it, then the jury instructions stating that the guilty, even if he did not have the intent to injure, was wrong. I'd first like to turn to the issue of the jury instruction. Instruction 30 created a very unnecessary confusion for the jury about what kind of intent Mr. Smith had to have at the time of the incident. By instructing the jury that Mr. Smith did not have to have the intent to bodily harm the deputy, the jury could easily have convicted Mr. Smith if he had no intent towards Deputy Beeler, which Mr. Smith indeed had no intent towards Deputy Beeler. His intent was simply to get away. Was this issue properly preserved? The instructional error was properly preserved. What was the objection raised below compared to the argument that you're now raising on appeal? The objection raised below was actually substantially similar. Instruction 30, the defense counsel stated over and over again was confusing. It lowered the burden of proof that the government had to prove Mr. Smith's mens rea. The defense counsel repeatedly said that the Ninth Circuit has affirmed and indeed the United States Supreme Court has stated that under 18 U.S.C. 111, the government has to prove an intent to assault. And by instructing the jury that they did not have to prove an intent to bodily harm Deputy Beeler, they were essentially confusing the jury as to what the government had to prove. Why is it confusing? I thought, isn't it correct that the jury did not need to find intent to bodily harm, but they did need to find intent to frighten? An intent to assault, Your Honor. So they had to find that he had an intent to frighten him. And by saying that he didn't have to intend to cause bodily injury, the jury could easily determine that that meant that they didn't even have to have any sort of intent towards Deputy Beeler. Why? I mean, I can imagine someone intending to frighten someone by running up to them with an ax over their head, even though that person really is just playing a practical joke before Halloween. They may have had an intent to frighten, but they never had an intent to really cause bodily harm. And when you do that to a Federal officer, why isn't that a violation of this subsection? Except that they were never instructed that he had to have an intent to assault them. Right? The Instruction 29 said he had to intentionally threaten another. And then it was modified by Instruction 30 by saying he didn't have the intent. He didn't have to cause bodily harm. But I'm not following that, because the jury is being told you have to intentionally threaten. Now, you don't have to intentionally carry out that threat, but you have to intentionally threaten. What's wrong with that instruction? Because you can intentionally threaten someone without having the intent to frighten them or put them in reasonable apprehension of bodily harm. And Really? I thought that's the definition of threaten. Threaten, I think you can threaten someone in many ways. I mean, this circuit is even held you can communicate a threat without actually intending the threat. And so the idea that a person can incidentally drive past someone and with no intent towards that person, and somehow that be transmuted into an intent to threat just based on the apprehension of fear of the officer without Let's assume that the jury instruction was a little confusing or it wasn't as clear as it should have been on the mens rea. Why isn't that harmless in light of the strength of the evidence in this case? Your Honor, I would argue that the evidence in this case does not prove that Mr. Smith had any intention towards Deputy Buehler. The only evidence that Mr. Smith had any intention towards Deputy Buehler is Deputy Buehler's statements that the defendant stopped twice, saw him, and was angry. And that would imply that he actually knew the position of Deputy Buehler at any point during his quick backwards and forwards interaction. Now this, again, was in Deputy Buehler's testimony alone. All of the other deputies that testified that day said that Mr. Smith never stopped. In fact, it was all one quick backwards and forwards motion that happened in two seconds. They weren't even able to get out of their car. So the idea that Mr. Smith stopped twice, saw the deputy, knew his location, and continued to veer at him is simply not credible. It's the testimony What was the defense position? The defense position was that his intent was to escape. Yes. And so that was the fundamental question before the jury, wasn't it? It was. As to his intent, whether he was intending to threaten or whether he was intending to escape. Correct. And when the jury instruction, though, then tells them that he didn't, reduces the government's burden of having to prove whether or not Mr. Smith had an intent towards Deputy Buehler specifically, I think it permitted the jury to convict him, even if his only intent was to escape. Just if Deputy Buehler perceived that escape as threatening, even if Mr. Smith himself did not have that intent, that's how the jury instruction is therefore harmful to Mr. Smith's entire defense, which is whether or not he had the intent to actually do anything towards Deputy Buehler. That's your position. Yes, Your Honor. And if there's no other questions on the instruction error, I would like to turn to the aggravated assault guideline and the application therein. And, you know, I understand that Your Honors may believe that an intent of fright is sufficient, but it's for the jury instruction, but it's, or the instruction was sufficient about that. Although, again, I would argue otherwise. Under the aggravated assault guideline, the government clearly had to adduce more evidence that he actually had the specific intent of the only way the aggravated assault guideline could have applied to his case. All four prongs under which the... I thought if under the aggravated assault guideline, it would be sufficient if he intended to threaten bodily harm and that threat involved a dangerous weapon. So going back to my analogy, a hatchet's a dangerous weapon. If I come after you with a hatchet, even though I only intend to harm you, even though I only intend to threaten you and not actually bodily harm you, then why wouldn't the aggravated assault guideline apply there? I have intended to threaten you and that threat involved a dangerous weapon. So under the aggravated assault guideline, Your Honor, it specifically says in the application notes that you have to, that a mere intent of fright is insufficient for the application of the aggravated assault guidelines. The actual, the individual, the defendant has to actually intend bodily injury. Where is that in the guideline? It is... Is that a 2A2.2 what? 2A2.2 and I think it's instruction, it's application note two. I have it right here. It is application note one. Aggravated assault means a felonious insult that involved a dangerous weapon with the intent to cause bodily injury, i.e. not merely to frighten with that weapon. And so if the government's proceeding under an intent to frighten theory, then the aggravated assault guideline simply could not have applied to his conviction. And so what you're saying is that even if the jury was properly instructed, if the judge in applying the guidelines and a preponderance standard came up with a fact that was not found by the jury, namely an intent to cause bodily injury, we've got a problem. Yeah, and the intent to cause bodily injury here doesn't exist. I mean, again, the only evidence of that is Deputy Buehler's statements that he came at him twice and stopped twice. Again, and all of the other, the testimony by the other deputies that were present that day contradict those statements. Well, hypothetically, if it did, if there was that evidence in the trial of intent to cause bodily injury, if the jury didn't make that express finding because they were instructed they don't have to find that, would there be a problem in the judge making that finding as part of applying the sentencing guideline under a preponderance standard? Yes, Your Honor. I think there's a problem with that if they're usurping the jury's verdict and the jury did not find that there was bodily injury in this case and were required to find that he caused bodily injury, I think the district court usurping again, as we argued repeatedly in our sentencing petition papers, there's a problem when the judge tries to usurp the role of the jury in making specific fact findings. As to the intent. Yes. And with that, Your Honor, I will reserve the remainder of my time for a rebuttal. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is Neil Antony and I'm an assistant United States attorney representing the government in this matter. I plan to spend the majority of my time addressing the jury instruction issue, Your Honor. And I want to start by stating that intent to assault is divisible into attempted battery and intent to frighten assault. This appeal rests solely with the defendant collapsing the two and importing a specific intent to injure requirement into intent to frighten assault. Now, the defendant does this, I think, in two ways. First, the defendant asserts that the jury was not at all instructed about mens rea. But that's not correct, Your Honor, and I'll get to that. Secondly, the defendant claims, again without support, that the instruction provided by the district court about intent to frighten assault was incorrect because assault requires the intent to injure. And I'll get to that as well, Your Honor. But I think it's important to consider the practical implications of this, which would be to essentially eliminate intent to frighten assault, including what this court has referred to as the paradigmatic example of intent to frighten assault, which is waving an unloaded officer. Importing an intent to injure requirement would completely get rid of that offense entirely. So assuming you're right, wouldn't it then be incorrect for a district court to applying application note one on the guideline for aggravated assault guidelines to find by a preponderance, when that question wasn't even before the jury, that there was an intent to cause bodily injury? No, Your Honor. I don't believe so. I think there are a few reasons. First of all, as Your Honor noted, it is a preponderance standard at sentencing. Second, there was plentiful evidence presented to the jury. And just because the jury didn't specifically find that there was intent to cause bodily injury doesn't mean that that evidence didn't exist. The evidence presented at trial was substantial. The defendant is citing to a selective rendition of facts, making it seem like there's some doubt about whether the defendant drove directly at Deputy Beeler. But there was no doubt. What was the evidence at trial that would allow the judge making a preponderance determination to find intent to cause bodily injury? The evidence was testimony of multiple officers. Multiple officers saw Deputy Beeler attempt to pull over the defendant. The defendant initially attempted to evade Deputy Beeler. Then when Deputy Beeler pulled in front of the defendant, officers saw Deputy Beeler get out of his truck and walk directly to the front of defendant's van. Then all of the officers testified that they saw the defendant drive directly at Deputy Beeler, and several of them testified that they saw the defendant do that without swerving. And isn't that entirely consistent with the intent that I assume that deputy is going to jump out of the way and then I have a free path to escape? Absolutely could be, Your Honor. But those two are not mutually exclusive. The intent to injure and the intent to escape are not mutually exclusive. When a defendant has an officer standing directly in front of him one car distance away and makes the decision, I want to escape, that doesn't mean he can just drive right through the officer, which is exactly what the defendant did. You can have a plan B. What was the objection raised at trial to the use of the enhanced or guideline? The objection at sentence – well, first of all, Your Honor, I think it's unclear that there actually was an objection at sentencing. The first position that the defendant had was that the courts should consider applying a different guideline section, and then the defendant went ahead and explained why the dangerous weapon enhancement and the aggravated assault guideline applied. Then at sentencing itself, the defendant abandoned the argument that the obstruction guideline applied and actually just went with the aggravated assault guideline and the dangerous weapon enhancement. So I believe that any argument that the aggravated assault guideline shouldn't apply has been waived. And the dangerous weapon enhancement objection wasn't raised at all. The defendant affirmatively advocated for application of it. That was – okay, I'm sorry. That was in order to avoid the application of what? To avoid the application – I'm not sure I'm quite following Your Honor's question. You said the defendant argued for the application of that guideline. Was that – that was a strategic choice, I assume. It appears to be. It appears to be what defendant was arguing at sentencing was a – made the strategic decision of arguing against the bodily injury enhancement, and that argument was actually – That was the – okay, bodily injury. That argument was moderately successful. The district court docked one point from that bodily injury enhancement. So it was a strategic decision. To add to the point I was responding to that Your Honor raised, some of the most compelling testimony was from Deputy Beeler himself, who testified that when he got out of his truck, he stood one car length from the defendant. He looked up. The defendant looked up. They made eye contact. He saw that the defendant looked angry. That incidentally was corroborated by the defendant's post-arrest interview where he said he was angry and wanted to get out of there. The forensic evidence also shows that Deputy Beeler was – He did say that he saw the deputy and gunned it anyway or something along those lines. Yeah, exactly, Your Honor. And then the forensic evidence indicates that Deputy Beeler was standing directly in front of the defendant's van. At least two shots were directly in front of the defendant's van, including one of them, that was fired at a slightly upward angle into the hood, which is consistent, the forensic examiner testified, with a shot falling backwards, as Deputy Beeler testified he was doing, falling backwards to get out of the way of the defendant's oncoming van. Back to your guideline argument. Would the defendant have been worse off from a guidelines calculation perspective under the obstruction of justice guideline? I don't believe that's the case, Your Honor. I think that – So I'm not understanding why is this – why was this an intentional waiver? We'll move away from obstruction of justice, but he concedes the aggravated assault guideline. I would submit it's because the evidence was so clear at trial that Deputy Beeler was standing immediately before the defendant. Okay. So it has nothing to do with the obstruction of justice issue. I don't – He just chose not to challenge that guideline application at sentencing. He asked the Court to consider applying it in his papers and then at sentencing didn't bother doing that and just went with the aggravated assault guideline and argued against bodily injury. Okay. Your Honor, turning back to the intent argument, I want to touch first on jury instruction 29, which was an – which was a jury instruction that was actually proposed by all of the parties, both by the defendant and by the government. It is the model rule instruction on forcible assault. The defendant below said that it perfectly captured all theories of assault. He also said that it was a clear and accurate statement of the law that includes all the proper intent requirement. So to the extent that the defendant is now arguing that the jury was not instructed about intent, he was. That's not correct. It said intentionally threatened. But that argument is also waived, Your Honor. There's no way to square those – there's no way to square those arguments. I do want to touch, though, on the substantive argument, assuming that the Court reaches it. The jury says that – says that – excuse me. The defendant says that the jury was never instructed about intent. Obviously, they were. The requirement was intentionally threatened. But I do – but the defendant points to Acosta Sierra repeatedly for that support. I do want to address Acosta Sierra because I believe that there is a misreading of Acosta Sierra. Acosta Sierra makes plain that it was decided at a time that the model instructions said merely that for there to be a forcible assault, there is a forcible assault when one person, and I quote, makes a threat. So the issue in Acosta Sierra was not whether specific intent was required. It's whether any intent was required because makes a threat is something that could be done intentionally or unintentionally. And so what Acosta Sierra decided was that some intent was required. Acosta Sierra described that as the intent to assault and also as the intentional use of force. Both of those exist here. So just to go to what the jury was instructed of, they were instructed that they had to find that the defendant forcibly assaulted. And then they were instructed that there were three types of forcible assault, and each one had a separate mens rea requirement. I don't believe the court needs to get into the specifics of whether this is a general intent or a specific intent statute because the jury was instructed that an intentional threat was required. Finally, Your Honors, on jury instruction 30, which is the intent to injure, I think the case law is pretty clear in this circuit. Sanchez, as well as Garcia Camacho, as well as cases in the Seventh Circuit and the intent to injure requirement, if the court was to import an intent to injure requirement, it would effectively do away with the paradigmatic example of intent to frighten assault. I see that I'm done with my time. Unless there are further questions, I'll submit. Thank you, Counsel. Thank you. Your Honor, I'd just like to use the remaining time to address a few questions that came up, including that Mr. Smith actually never said that he saw Deputy Beeler standing in front of him ever in the course of his post-arrest statements. In fact, throughout his post-arrest statements, he said he was standing off to the side, he wasn't in front of me, I didn't hit him, I didn't mean to hit him. Is he actually accusing me of hitting him? What? He actually seemed surprised that that was the accusation he was being faced with. Again, because he did not have the intent to harm Deputy Beeler. He had no intent towards Deputy Beeler. Why isn't the aggravated assault guideline argument waived? It's not waived, Your Honor. First of all, it would be ineffective assistance of counsel for anyone to waive an argument that would save their client 60-plus months on their sentence. The obstruction of justice guideline is significantly lower than the aggravated assault guideline. And defense counsel's arguments, even in their sentencing compensation paper and during the hearing, were really meant to say we understand that 18 U.S.C. 111 is listed as one of the sections where an aggravated assault guideline has been applied to it. But they're still inviting the court to apply the obstruction of justice guideline. And the obstruction of justice guideline is 60 months lower than the aggravated assault guideline. There is, I mean, the bodily injury, one offense level off doesn't even compare. So there's absolutely no strategic reason why any defense attorney would give up that argument for the saving of one, like I think it's 10 or 12 offense levels to save one offense level. And so, you know, to the extent if this court holds it's waived, I would argue that that's definitely ineffective assistance of counsel. But it's not waived. Because once again, at no point did the attorney stand there and say I'm giving up my argument that the obstruction of justice guideline should not apply to this offense. I'm relinquishing all right to the application of that guideline. They never said that. And in fact, invited them to argue it and stated that he didn't have the intent to bodily injure and asked the court to respect the jury's verdict to that effect where the jury did not find that he caused bodily injury. And, you know, again, back to the jury instruction, an intent to assault still requires the jury to find that he had the intent to put Deputy Beeler in reasonable apprehension of harm. So to your example, Judge Simon, where, you know, a Halloween costume, they're trying to frighten someone, if that's a federal officer, that wouldn't count because they're not actually intending to put that person in a reasonable apprehension of fear for their life. And that's sort of what the intent to assault that Acosta Sierra was trying to capture. And you're over time. Okay. Thank you, Your Honor. My colleagues have any additional questions? Thank you, counsel. The matter is submitted for decision.
judges: Schroeder, Nguyen, Simon